**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frank MARTINEZ,**
**Defendant–Appellant.**

No. 85–6553.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1987.

Decided Jan. 21, 1988.

William J. Landers, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Bryan Sheldon, Law Offices of Allan A. Sigel, Los Angeles, Cal., for defendant-appellant.

Before ALARCON and O'SCANNLAIN, Circuit Judges, and BROOMFIELD *, District Judge.

O'SCANNLAIN, Circuit Judge:

In this proceeding under 28 U.S.C. § 2255, we are asked to decide whether an individual sentenced to incarceration, but never ordered to report to prison because of a court clerical error, can be compelled to start serving his sentence seven and one-half years later when the government first discovers the mistake.

## FACTS AND PROCEEDINGS

In 1972 Martinez was employed as a business agent for the Teamsters' Union, in connection with which he was indicted for obstruction of justice, 18 U.S.C. § 1503, and for conspiring to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. Although acquitted of the conspiracy charge, he was convicted of obstruction of justice, and on April 11, 1973 was sentenced to four years' imprisonment. We affirmed Martinez's conviction in *United States v. Campanale*, 518 F.2d 352 (9th Cir.1975), and the Supreme Court denied Martinez's petition for certiorari. *Grancich v. United States*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

On March 8, 1976 the district court spread upon the record the mandate of the court of appeals affirming the convictions of Martinez and his codefendant. The court's minute order contains no indication that Martinez was ordered to report to the custody of the Attorney General to begin serving his sentence, and no commitment order was entered. While Martinez was not present at the proceeding, his counsel was. Martinez was not ordered to surrender, but his codefendant was; the codefendant's sentence was completed. The government does not controvert the fact that between the dates of the spread of

---

* The Honorable Robert C. Broomfield, United States District Judge for the District of Arizona, sitting by designation.

mandate and discovery of the error seven and one-half years later, Martinez never received notice to surrender himself to prison authorities to begin serving his sentence.

Martinez had remained free on bond throughout the 1973–76 appeal process. Curiously, on January 11, 1978 the district court issued an order exonerating Martinez's appeal bond.

In 1982 the Federal Bureau of Investigation discovered that Martinez had never served his sentence. A year later the government filed a motion for an order requiring Martinez to begin service of his sentence. After a court conference, Martinez was ordered to report to the Bureau of Prisons to begin service of sentence on October 31, 1983, which he did. Throughout the seven and one-half years between conviction and the 1983 order to begin service of sentence, Martinez made no attempt to conceal his identity or to flee. He had lived at the same address for the twenty-one years prior to this proceeding. Until recently he continued to work at the same job.

After the commitment order, but before surrendering himself, Martinez filed a motion pursuant to 28 U.S.C. § 2255 to vacate or to set aside his sentence and filed a motion for a stay of surrender. On November 7, 1983 the district court denied the motion for stay of surrender, and on January 25, 1984 it denied his section 2255 motion.

Martinez appealed the denial of his section 2255 motion to this court. Because he had been in custody since October 31, 1983, Martinez also moved for release pending appeal. On April 24, 1984 a motions panel ordered him released pending appeal on his own recognizance, subject to such reporting requirements and travel restrictions as the district court might impose. On August 6, 1985 this court issued a memorandum disposition on Martinez's appeal from the denial of his section 2255 motion reversing and remanding to the district court

to determine whether Martinez was a worthy candidate for probation. *United States v. Martinez,* 770 F.2d 171 (9th Cir. 1985).

On remand, the district court determined that Martinez was not a suitable candidate for probation, and on November 13, 1985 ordered Martinez to recommence service of sentence. In doing so, the district court judge found:

That the defendant's counsel Mr. Allan A. Sigel was advised by notice from the clerk of the court of the filing and spreading of the judgment of the Court of Appeals affirming the conviction of Mr. Martinez ... [T]hat the record shows that Mr. Sigel was present on March 8, 1976 at the filing and spreading of the mandate of the court of appeals. And that he presented to the clerk a business card.... That Mr. Martinez was personally aware, as was his counsel, that the conviction for which he'd been sentenced was affirmed by the Court of Appeals. That the petition for writ of certiorary [sic] had been denied and the petition for rehearing had been denied by the Supreme Court of the United States. That Mr. Martinez was under an obligation to surrender himself to begin the prison sentence which had been imposed upon him. That he with knowledge of the fact that a clerical error had been made by the court in the failure to issue a bench warrant for his arrest upon his failure to present himself for service of the sentence did willfully and with full knowledge of that error fail to advise the government or the court of the error and continued to absent himself from the service of the sentence until he was arrested in 1983.

Martinez then moved the district court for release pending appeal, which motion the district court denied without comment; however, a motions panel of this court granted Martinez's motion for release pending the outcome of this appeal.[1] In

1. On December 6, 1985 Martinez was ordered reincarcerated; however, the district court subsequently extended Martinez's surrender date to

January 6, 1986. Since Martinez's motion for release pending the outcome of this appeal was granted on December 30, 1985, he has not been

this second appeal, having previously ruled on procedural probation claims, we now turn to the merits of Martinez's substantive arguments.

## DISCUSSION

On appeal, Martinez claims that the execution of sentence violates his rights guaranteed by the United States Constitution. He also raises various claims alleging that the district court committed reversible error.

### I

Martinez contends that incarceration after a seven and one-half year delay violates the due process guarantees of the fifth amendment.

At common law, "where the court's judgment is that the defendant be imprisoned for a certain term and for any reason, other than death or remission of sentence, time elapses without the imprisonment being endured, the sentence remains valid and subsisting in its entirety." *United States v. Vann*, 207 F.Supp. 108, 113 (E.D. N.Y.1962). Thus, under common law a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed.

More recent cases, however, examine the totality of the circumstances surrounding the delay in execution of sentence. *See Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir.1982) (citing *United States v. Merritt*, 478 F.Supp. 804, 807 (D.D.C.1979)). If from the totality of the circumstances due process is violated, a convicted person is not required to serve the entire sentence imposed. *See id.* Traditionally, in cases involving delay in execution of sentence, federal courts have examined an alleged due process violation under the theories of waiver or estoppel. *Id.; Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir.1984).

Under the waiver theory, this court in *Johnson*, 682 F.2d at 873, adopted the to-

tality of circumstances test espoused in *Merritt*:

> A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted— the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his incarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.'"

*Merritt*, 478 F.Supp. at 807.

The parties disagree as to whether the delay in execution of sentence is in part attributable to Martinez. While it may not be Martinez's fault, the record indicates that he made no effort to contact any authorities regarding the mistake.

Courts have looked with favor on a defendant's attempt to bring a mistake to the government's attention. *See Shelton v. Ciccone*, 578 F.2d 1241, 1245 (8th Cir.1978) (petitioner's mother calls authorities); *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir.1930) (prisoner brings mistaken release to warden's attention, but is "brushed aside"); *Merritt*, 478 F.Supp. at 807 (defendant contacts U.S. Marshal's office several times).

■ In *Green*, this court held that the government waives the right to incarcerate only "when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." 732 F.2d at 1399. *See also Johnson*, 682 F.2d at 872–73 (due process violated when prisoner was incarcerated after being released on parole following at least eight separate administrative reviews); *Shields v. Beto*, 370 F.2d 1003, 1004 (5th Cir.1967) (due process violation to delay execution of sentence twenty-

incarcerated a second time. To date it appears that Martinez has served approximately six

months of his four year sentence.

eight years). Although Martinez attempts to characterize the government's error as "multi-layered," the essence of the error was a failure to order the execution of sentence. Because the government's acts do not constitute action so affirmatively wrong or inaction so grossly negligent that fundamental fairness is violated, we cannot conclude that the government impliedly waived execution of Martinez's sentence.

■ Under the estoppel theory, this court has employed a four-part test which requires that:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

*Green,* 732 F.2d at 1399.

Martinez does not meet such test. *See id.* Martinez was not ignorant of the facts surrounding the delay in execution of sentence. Indeed, he testified that he knew a mistake had been made. Further, the government's actions here did not amount to affirmative misconduct. *See Jaa v. United States I.N.S.,* 779 F.2d 569, 572 (9th Cir.1986) ("Affirmative misconduct must be more than negligence.... Mere unexplained delay does not show misconduct"). Thus, under either an equitable notion of estoppel or under a waiver theory, Martinez's due process argument must fail.

## II

Alternatively, even if the government's action did not rise to the level of gross negligence, thereby violating due process, Martinez contends that he is entitled to other equitable relief for a clear showing of negligence.

■ Under the doctrine of credit for time at liberty, a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own. *See Green,* 732 F.2d at 1400; *Smith v. Swope,* 91 F.2d 260, 262 (9th Cir.1937); *Pearlman,* 42 F.2d 788, 789 (10th Cir.1930). In *Green,* the inadvertence of a marshal in failing to place a detainer on Green amounted to mere negligence. 732 F.2d at 1399. This court found that such conduct did not amount to violation of Green's due process rights and thus did not constitute either waiver or estoppel. *Id.* Nevertheless, we held that Green was entitled to credit for time at liberty because he was released "through the inadvertence of agents of the government and through no fault of his own." *Id.* at 1400.

Here, Martinez failed to be incarcerated because of a ministerial error which resulted from no fault of his own. Martinez did not hinder the issuance of the order to commence service because he has lived at the same residence, has made no attempt to conceal his identity or to flee, and has continued to work at the same job. Martinez has indeed evinced a willingness to comply with such orders; he has already served a portion of his sentence.

Traditionally, the doctrine of credit for time at liberty has only been applied where a convicted person has served some part of his sentence and then been erroneously released. *Swope,* 91 F.2d at 260; *Pearlman,* 42 F.2d at 788. It is immaterial whether the convicted person has served one day or ten years of his sentence; if he is erroneously released thereafter, he is entitled to full day-for-day credit for the time he was at liberty. *See Green,* 732 F.2d at 1401. We express no opinion whether a distinction between serving one day and serving no time at all justifies a conclusion that credit be given for time erroneously at liberty.

In any event, Martinez's claim for credit for time at liberty is premature. There is no showing in the record that Martinez has pursued administrative remedies through the prison system. The courts have original jurisdiction only over the imposition of sentence, not over its computation: "It is the administrative responsibility of the At-

torney General, the Department of Justice, and the Bureau of Prisons to compute sentences and apply credit where it is due. It is not the province of the sentencing court." *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir.1979). This court has very recently reaffirmed that it lacked jurisdiction to grant credit toward the sentence of a federal prisoner. *Shabazz v. Carroll*, 814 F.2d 1321, *reh'g granted*, 833 F.2d 149 (9th Cir.1987).

### III

Martinez raises numerous other issues on appeal. He contends that the district court erred in finding that (1) he was aware of the court's ministerial error, or (2) that his counsel, Allan Sigel, had notice of and was present at the March 8, 1976 hearing for the spreading of the mandate.

■ We review the district court's findings of fact for clear error, *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Under that standard, we uphold its findings. Martinez testified repeatedly that he was aware of the district court's mistake. "I also hoped that somehow or other the mistake of my not being called into court would never come to light." He knew that his codefendants had gone to jail. He realized that a mistake of some kind had been made.

■ The court's findings with respect to Sigel present a closer question. Sigel testified that he never received notice of the spreading of the mandate and was not present at the hearing. Despite this testimony, the district court concluded otherwise, based upon court records of notice of the hearing and Sigel's attendance at it. It is clear that Sigel did know that the Supreme Court had denied *certiorari*. He never filed a motion under Fed.R.Crim.P. 35 for modification of sentence because his client was never ordered to serve his sentence.

Thus, because "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse ... Where

there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511.

### IV

■ Martinez appeals the district court's finding that a defendant has an affirmative duty to commit himself to prison. We review questions of law *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We hold that, just as a defendant has no duty to bring himself to trial, *Barker v. Wingo*, 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101 (1972), he has no affirmative duty to aid in the execution of his sentence. However, even a finding that Martinez indeed had no duty to report the mistake will not suffice to overcome the other hurdles presented him.

### V

Martinez also argues that his commitment violates his sixth amendment right to a speedy trial. The Supreme Court has not yet decided whether the sixth amendment encompasses the sentencing phase of a criminal trial. *Tinghitella v. California*, 718 F.2d 308, 312 (9th Cir.1983); *see Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 485–86, 1 L.Ed.2d 393 (1957) (assumed *arguendo*). This court has treated the imposition of sentence as within the speedy trial guarantee, *Tinghitella*, 718 F.2d at 312–13 (citing *Walsh v. United States*, 423 F.2d 687 (9th Cir.1970)), but has refrained from explicitly recognizing it as such. *Id.* at 313.

■ But, even according to the terms of *Tinghitella*, Martinez's claim fails: "The constitutional duty of the state to make a diligent, good-faith effort to sentence, and thus petitioner's right to be sentenced, arises only upon the petitioner's demand." *Id.* at 313. Here, Martinez made no such demand.

Moreover, should his constitutional right be brought into play, an application of the full-fledged sixth amendment balancing

test requires the same result. This court must weigh four factors in evaluating a sixth amendment claim: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) prejudice to the defendant." *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir.1985). No one factor is necessary or sufficient to establish a deprivation. *Id.*

While the delay in this case was extraordinary, and was through no fault of Martinez, Martinez's failure to assert his right to a speedy trial is given "strong evidentiary weight." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. A defendant's failure to assert his right makes it difficult to prove a deprivation. *Id.* at 531–32, 92 S.Ct. at 2192–93. Martinez, like defendant Barker, "did not want a speedy trial." *Id.* at 536, 92 S.Ct. at 2195.

■ Martinez has also suffered minimal prejudice. The three interests that should be considered to determine prejudice are "(1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Williams*, 782 F.2d at 1466. Martinez suffered no oppressive pretrial incarceration. Moreover, the anxiety and concern balanced in the test refer to the disadvantages associated with *pretrial* process. *See United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982); *Barker*, 407 U.S. at 532–33, 92 S.Ct. at 2193. Martinez's ability to prepare his defense could not, of course, have been affected by the delay in execution of the sentence. Thus, his sixth amendment rights were not violated.

## VI

■ Finally, Martinez contends that the district court erred in refusing to grant him probation. His original presentence report had recommended probation. This court remanded to the district court to determine whether Martinez was a worthy candidate for probation, and we must now defer to its judgment. Sentencing is left to the sound discretion of the district court; its decision

is reviewed for an abuse of that discretion. *United States v. Messer*, 785 F.2d 832, 834 (9th Cir.1986). A sentence within statutory limits is generally not reviewable unless constitutional concerns exist. *Id.* at 834. Here, Martinez does not argue that the sentence exceeded statutory limits. Nor does he argue that a four year term raises constitutional concerns. Hence, we cannot conclude that the district court abused its discretion.

AFFIRMED.